WALLER *v.* SLOAN.

1. CONTRACTS—BREACH—SECOND CONTRACT HELD NOT TO ABROGATE FIRST.

In an action for the breach of a contract whereby defendant agreed to hold in his possession certain cord wood sold to a company of which he was the manager, and not deliver same until the money to pay for it was placed to plaintiff's credit in a certain bank, a second contract for the sale of additional wood to the same company, in which specific reference was made to the first contract, *held*, not to abrogate the first contract.

2. EVIDENCE—PAROL EVIDENCE INADMISSIBLE TO VARY WRITTEN CONTRACT.

Where the written contract speaks, its language is final, and parol evidence to the contrary is not admissible.

3. WITNESSES—PLAINTIFF MAY MAKE HIS CASE BY CROSS-EXAMINATION OF DEFENDANT.

Plaintiff, in calling defendant for cross-examination under 3 Comp. Laws 1915, § 12554, had a right to make out his case by the testimony of defendant, since it stood in no different position in the case than it would had it been called out by cross-examination after he had taken the stand in his own behalf.

4. PARTIES—JOINDER OF DEFENDANTS NOT FATAL TO JUDGMENT AGAINST ONE.

Joinder of defendants was not fatal to right of judgment against one and discharge of the other.

Error to Charlevoix; Mayne (Frederick W.), J. Submitted October 18, 1923. (Docket No. 39.) Decided December 19, 1923.

Assumpsit by Edward C. Waller against Robert F. Sloan and another for breach of a contract of bailment. Judgment for plaintiff on a directed verdict. Defendant Sloan brings error. Affirmed.

On general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

*Clink & Williams,* for appellant.

*Rollie L. Lewis,* for appellee.

WIEST, C. J.    In this opinion when we speak of defendant we refer to Robert F. Sloan. This is a suit on defendant's undertaking to hold kiln wood belonging to plaintiff, and in his possession and intended for sale to the Charlevoix Rock Products Company, until estimates of amount wanted by the company from month to month were made and paid for and the money placed in bank to the credit of plaintiff. Defendant was manager of the company and breached his agreement with plaintiff by letting the company have the wood without payment. Evidently the financial condition of the company was such that plaintiff was not willing to extend credit to it and defendant, as manager, was anxious to procure the wood and this led to the making of the agreement.

Two agreements are involved, and only the substance thereof will be stated. September 27, 1915, by written agreement, defendant became custodian of 1,500 cords of kiln wood, owned by plaintiff, and piled on premises controlled by defendant. This wood had been cut for intended sale to the Charlevoix Rock Products Company. As general manager of the company wanting the wood, defendant was to estimate the first of each month the number of cords the company desired, and before letting the company use any, furnish plaintiff evidence that the pay for the estimated quantity, at $1.60 per cord, had been deposited to plaintiff's credit in the Charlevoix County Bank.

Defendant claims that this agreement was abrogated by another made between plaintiff and the Rock Products Company a few days later. October 2, 1915, plaintiff entered into an agreement with the Charlevoix Rock Products Company in which the company agreed to use the 1,500 cords of wood before

January 1, 1916, "at the prices agreed upon in a certain contract entered into between the said E. C. Waller and one Robert F. Sloan," and after so using such wood, before purchasing kiln wood elsewhere, the company should use 3,000 cords of wood belonging to plaintiff and 2,000 cords belonging to the Charlevoix Lumber Company, taking such 5,000 cords at the rate of 3 cords of plaintiff's wood to 2 cords of the lumber company's, "all of the said 5,000 cords of kiln wood to be paid for in accordance with an agreement between said Robert F. Sloan and E. C. Waller, to which this agreement is hereby attached and made a part thereof."

We do not understand that any of the 5,000 cords of wood was furnished the Rock Products Company under this agreement, and it is in the case only for its bearing upon the question of the liability of defendant with reference to the 1,500 cords of wood mentioned in the first agreement.

The declaration contained counts in assumpsit and trespass on the case.    Verdict was rendered in favor of plaintiff and against defendant Sloan, by direction of the court, under the assumpsit count for $2,600, that being the value of the 1,500 cords of wood at $1.60 per cord as fixed in the agreement, with interest to the date of trial.    The Charlevoix County Bank was held not liable and it is not necessary to even state the theory upon which it was made a defendant.    Defendant Sloan has brought the case here by writ of error, assigning 50 errors.    Happily the errors fall within a few groups.

Defendant claims the agreement of October 2d turned the 1,500 cords of wood over to the Rock Products Company, and therefore he was custodian only five days, and after such October agreement he was under no obligation to get pay for the wood before turning the same over to the company.    We do

not so read the contract of October 2d. The contract is not artistic, but it speaks plain enough to show it was not to take the place of the agreement between plaintiff and defendant, but only to cover other wood to be paid for as provided in the contract to which it made reference, and defendant's signature to such contract clearly indicates the purpose of having the sale of additional wood carry with it the obligation on his part assumed in the first contract with reference to delivery and pay. Upon the face of the second contract Mr. Sloan did not sign as a representative of the Rock Products Company, for the vice-president and secretary signed for that company. Mr. Sloan signed because of the reference in the contract to his existing obligation as to the 1,500 cords of wood for the purpose of carrying the terms of his custodianship to the additional wood.

Where the written contract speaks, its language as to the obligation of defendant is final, and the court was not in error in refusing to let defendant show otherwise.

Plaintiff, to prove his case, called defendant as a witness under the provisions of 3 Comp. Laws 1915, § 12554, granting right to call and cross-examine the opposite party without being bound by the testimony. Defendant says:

"The court erred in permitting plaintiff to make out his case in chief from the cross-examination of defendant Sloan, over his objection."

If defendant Sloan's testimony proved plaintiff's case in what way has defendant been harmed? The purpose of the statute is to level former technical rules and to get at the facts in issue. Evidently the cross-examination was no "fishing expedition" for the complaint is that it proved plaintiff's case. It did.

What does the statute mean in giving "the right to cross-examine such witness the same as if he

were called by the opposite party." The so-called "orthodox rule" extending the right of cross-examination to all points material to issues involved, and not limiting it to matters brought out on direct-examination, has ever prevailed in this State. *People* v. *Barker*, 60 Mich. 277 (1 Am. St. Rep. 501), and cases there cited. The legislature was aware of this rule and employed the term "cross-examine" advisedly. It must be remembered in considering cases upon the right to cross-examine that the Michigan rule does not prevail in a majority of the States.

Defendant cites *Langford* v. *Issenhuth*, 28 S. D. 451 (134 N. W. 889). This case does not help him. It was there held under a statute of similar import:

"It appears to us that the main purpose of this statute is to permit an adverse party to be called as a witness to prove or to be interrogated concerning facts material to the case of the party calling him, and that such witness may be called to prove a single material fact, or any number of material facts, even the whole case. * * *

"The statute proceeds apparently on the theory that an adverse party thus called may speak the truth in favor of the party calling him, and thus end or shorten the case, and that such possibility is sufficient reason for changing the old rules, so far as parties to the action are concerned."

In *Osborn* v. *Carey*, 24 Idaho, 158 (132 Pac. 967), the defendant was a physician, and in the suit he was charged with malpractice and at the trial was called by the opposite party and asked to give expert testimony. It was held that an opposite party could not be called under the statute for cross-examination as an expert witness. That question is not before us. The testimony given by defendant on cross-examination, under leave of the statute,

"stood in no different position in the case than it would had it been called out by cross-examination

after he had taken the stand in his own behalf." *Aphoresmenos* v. *McIntosh,* 189 Mich. 680.

Plaintiff had a right, if he could, to make out his case by the testimony of defendant. If the statute admits of abuse in the nature of a search of a defendant's side of a case before a plaintiff enters upon proof of his case the legislature can provide a remedy. It is, however, no abuse of the statutory leave, and does not at all offend justice, for a plaintiff to "make out his case from the cross-examination of defendant."

The circuit judge was of opinion that the subsequent acknowledgment by defendant of liability under the first contract was important, as without it he would construe the second contract as abrogating the first. As stated, we think the first contract remained in full force after the making of the second, so we need spend no time in considering the errors assigned upon the admission of evidence relating to subsequent acknowledgment of liability by defendant. Under the first contract and defendant's testimony, plaintiff was entitled to judgment.

Direction of a verdict under the first count renders it unnecessary to determine whether the court should have compelled plaintiff to elect between counts.

Joinder of defendants was not fatal to right of judgment against one and discharge of the other. The issues were not submitted to the jury.

What we have said covers the errors presented.

No prejudicial error appearing, the judgment is affirmed, with costs against defendant Robert F. Sloan.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.